UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELITA AQUINO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>TOYOTA MOTOR SALES USA, INC.,<br><br>　　　　Defendant. | Case No. 15-cv-05281-JST<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: ECF No. 16 |

Before the Court is Defendant's Motion to Compel Arbitration and Dismiss, or in the Alternative, Stay Proceedings. ECF No. 16. The Court will grant the motion to compel arbitration.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

　**A.   The Complaint**

Plaintiff Angelita Aquino filed this action against Defendant Toyota Motor Sales USA, Inc. ("Toyota") on November 18, 2015. ECF No. 1. The Complaint alleges twelve causes of action: (1) breach of contract; (2) elder abuse under Cal. Welfare & Inst. Code § 15610.30; (3) age discrimination under the Age Discrimination in Employment Act ("the ADEA") (29 U.S.C. § 631(a)) and Cal. Gov. Code §§ 12940 and 12945; (4) retaliation under the ADEA (29 U.S.C. § 623(d)); (5) bad faith denial of contract; (6) fraud under Cal. Civil Code § 1572; (7) violation of the Equal Pay Act of 1963 (29 U.S.C. § 206(d)); (8) discrimination based on disability under California's Fair Employment and Housing Act and the Americans with Disabilities Act ("the ADA"); (9) failure to prevent unlawful discrimination under the ADA and Cal. Gov. Code § 12940(k); (10) failure to accommodate a disability under the ADA and Cal. Gov. Code § 12940(m); (11) failure to engage in the interactive process under the ADA and Cal. Gov. Code § 12940(n); and (12) retaliation based on age, disability, and the exercise of statutory rights under

1  the California Labor Code.  Id.

2  Ms. Aquino has worked for Toyota for 44 years.  ECF No. 1 ¶ 4.  She works at Toyota's
3  location in San Ramon, California, and reports directly to Toyota's main headquarters in Torrance,
4  California.  Id.  On or before August 1, 2014, Toyota told her that it intended to relocate its
5  headquarters from Southern California to Plano, Texas, and that Ms. Aquino's division office in
6  Torrance, California, would be closed.  Id. ¶ 5.  Toyota offered her two options with regard to the
7  company's move to Texas:  Ms. Aquino could choose either a relocation package which would
8  assist her with the cost of moving to Texas, or a retention package under which she would remain
9  employed in California until Toyota decided to dismiss her from work.  Id. ¶¶ 5, 10.  Ms. Aquino
10 claims that she told Toyota that she accepted the second option.  Id. ¶ 10.

11 According to Ms. Aquino, she and her manager accessed an online calculator that
12 demonstrated that Ms. Aquino's retention package would be approximately $131,923.00.  Id. ¶ 11.
13 In April or May of 2015, Toyota advised Ms. Aquino that she would not be paid the retention
14 package, and that she was told that Toyota needed to save money.  Id. ¶ 12.  Ms. Aquino alleges
15 that Toyota then moved her to a new position in which she would be largely required to perform
16 warehouse work, including the operation of moderately heavy machinery and other work, which
17 involved long hours of standing, stretching, kneeling, and bending.  Id. ¶ 13.  Ms. Aquino
18 protested several times to Toyota that she had certain physical and medical conditions, which
19 hampered her ability to perform her new duties, but Toyota failed to initiate an interactive process
20 to determine whether it could make reasonable accommodations for Ms. Aquino.  Id. ¶¶ 19, 20.

21 In July of 2015, Ms. Aquino provided a medical certification to Toyota stating that she has
22 a disability that impairs her ability to perform the essential functions of the warehouse position.
23 Id. ¶ 21.  In response, Toyota began training Ms. Aquino in a new position.  Id. ¶ 22.

24 On September 4, 2015, Ms. Aquino filed a discrimination complaint with the California
25 Department of Fair Employment and Housing ("DFEH"), and the Equal Employment Opportunity
26 Commission ("EEOC").  Id. ¶ 26.  After obtaining a "right to sue" letter from the DFEH, Ms.
27 Aquino filed this action.  Id. ¶ 30.  On February 8, 2016, Toyota filed a motion to compel
28 arbitration, ECF No. 16, which motion the Court now considers.

### B. Agreement to Arbitrate

In August 2013, Toyota distributed a Mutual Agreement to Arbitrate Claims (the "Agreement") to all of its employees via their company email accounts and by sending a duplicate hard copy directly to each employee's home address.[1] ECF No. 16 at 1–2; ECF No. 17 ¶¶ 4–5 ("Decl. of Jennifer Gonzalez"); ECF No. 17-1("Mutual Agreement to Arbitrate Claims"). The Agreement provided for binding arbitration before the Judicial Arbitration and Mediation Services, Inc. ("JAMS"). ECF No. 17-1 at 4. The Agreement stated:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I (and no other party) may have against any of the following (1) the Company, (2) its officers, directors, associates or agents in their capacity as such or otherwise, [or] (3) the Company's parent, subsidiary and affiliated entities . . . Arbitrable claims include, but are not limited to: all statutory claims arising out of the employment relationship or its termination; claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for retaliation; claims for harassment or discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition); claims for benefits; . . . claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance.

ECF No. 17-1 at 2. Toyota sent the Agreement to Ms. Aquino's company email account, as well as a duplicate hard copy directly to Ms. Aquino's home address, on August 12, 2013. ECF No. 17 ¶ 9.

The Agreement was structured to be binding on all employees unless an employee submitted an opt-out notice. ECF No. 17-1 at 7; 17-2 at 3. The email announcement and mailing sent to Ms. Aquino on August 12, 2013 contained the following instructions:

> If you do not want the attached Agreement to apply to you, then you must complete the attached Opt-Out Form and fax a copy of the completed form to the Toyota Arbitration Administrator . . . by

---

[1] Toyota circulated a revised arbitration agreement to its employees in August 2015, which provided for binding arbitration of employment-related claims without allowing employees to opt out. ECF No. 16 at 8 n.2. Toyota does not seek to enforce the August 2015 agreement at this time. Id. Therefore, this Order discusses only the 2013 Agreement.

3

> November 10, 2013. If you do not fax a completed Opt-Out Form to the Toyota Arbitration Administrator by November 10, 2013, you and the Company will have agreed to resolve disputes through final and binding arbitration, in the manner that is described in the attached Agreement.

ECF No. 17-2 at 3; ECF No. 17-3 at 3. The email announcement and mailing sent to Ms. Aquino also stated: "If you do not opt out, and you remain employed after November 10, 2013, you will have consented to the Mutual Agreement to Arbitrate Claims. " Id.

Ms. Aquino "recalls getting the August 12, 2013" email from Toyota regarding the Agreement. ECF No. 24 at 10. However, she "believed she could not accept the agreement without signing it, and she intentionally did not sign it because she did not agree with it." Id. Ms. Aquino contends that, contrary to the "Voluntary Agreement" section of the Agreement, she did not carefully read the Agreement, understand its terms, or agree to any of its terms. ECF No. 24-1 ¶ 5. Toyota claims, and Ms. Aquino does not dispute, that Ms. Aquino did not take any action to opt out of the Agreement. ECF No. 25 at 2–3.

## II.   LEGAL STANDARD

The Federal Arbitration Agreement ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal citations omitted). An arbitration clause may be revoked by "generally applicable contract defenses, such as fraud, duress, or unconscionability." Rent-A- Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010) (internal quotation marks omitted).

A party bound by an arbitration clause may bring a petition in the district court to compel arbitration. 9 U.S.C. § 4. The FAA leaves no place for the exercise of discretion by a district court. Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218 (1985). On a motion to compel arbitration, the court's role under the FAA is "limited to determining (1) whether a valid

4

agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "If the answer is yes to both questions, the court must enforce the agreement." Lifescan, Inc. v. Premier Diabetic Services, Inc., 363 F.3d 1010, 1012 (9th Cir. 2004).

When deciding whether a valid arbitration agreement exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp. Alabama v. Randolph, 531 U.S. 79, 91 (2000).

## III. ANALYSIS

The only question the Court must decide is whether, under California law, Ms. Aquino consented to arbitrate her claims against Toyota by receiving the Agreement, failing to opt out of it, and continuing to work for Toyota.[2] When a federal court confronts a question of state law without binding precedent from the state's highest court, as is the case here, the court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." In re Kirkland, 915 F.2d 1236, 1239 (9th Cir. 1990).

### A. The Agreement to Arbitrate is Valid Under California Law

In California, "acceptance of an agreement to arbitrate may be express . . . or implied-in-fact where . . . the employee's continued employment constitutes her acceptance of an agreement proposed by her employer." Craig v. Brown & Root, Inc., 84 Cal. App. 4th 416, 420 (internal citations omitted); see also Bayer v. Neiman Marcus Holdings, Inc., 582 Fed. App'x 711, 713 (9th Cir. 2014) ("California's intermediate appellate courts have recognized that employees' consent may be implied from their continued employment after the unilateral imposition of an arbitration

---

[2] Ms. Aquino does not argue that the Agreement is unconscionable, or otherwise unenforceable, nor does she argue that the Agreement, if valid, does not encompass the claims in her Complaint. ECF No. 24. Accordingly, the Court need only determine whether "a valid agreement to arbitrate exists." Chiron, 207 F.3d at 1130.

agreement by the employer. "). "Where an employee continues in his or her employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions." Davis v. Nordstrom Inc. 755 F.3d 1089, 1093 (9th Cir. 2014) (applying California law).

The Court concludes that an implied-in-fact agreement exists between Toyota and Ms. Aquino to arbitrate the claims at issue in this litigation. As in Craig, Ms. Aquino had notice of Toyota's implementation of the arbitration agreement, and she continued to work for Toyota after the Agreement went into effect. 84 Cal. App. 4th at 416. Toyota's email announcement and mail package specifically stated: "If you do not opt out, and you remain employed after November 10, 2013, you will have consented to the Mutual Agreement to Arbitrate Claims. " ECF No. 17-2 at 3; ECF No. 17-3 at 3. Ms. Aquino does not dispute having received the email announcement attaching the Agreement, nor does she dispute that she did not submit an opt-out form. ECF No. 24 at 10. Accordingly, Ms. Aquino consented to the Agreement by continuing to work at Toyota after November 10, 2013.

Ms. Aquino argues that she thought that she would have to sign the Agreement to make it effective, and that she did not sign the Agreement because she did not agree to it. ECF No. 24 at 10; ECF No. 24-1 ¶ 4. Ms. Aquino further asserts that no contract could have been formed without her intentional communication of assent. ECF No. 24 at 7. These arguments are premised on a misunderstanding of California law. In California, "mutual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding." Reigelsperger v. Siller, 40 Cal. 4th 574, 579–80 (2007) (citing 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 116, p. 155). A parties' "uncommunicated subjective intent is irrelevant." Id. "Although mutual consent is a question of fact, whether a certain or undisputed state of facts establishes a contract is a question of law for the court." Deleon v. Verizon Wireless, LLC, 207 Cal. App. 4th 800, 813 (2012) (citation omitted).

Here, it is undisputed that Ms. Aquino received the Agreement (at least via email), that she failed to opt out of it, and that she continued to work at Toyota after the Agreement went into effect. ECF No. 24 at 10; ECF No. 25 at 2–3. Moreover, Ms. Aquino does not argue that she ever

6

attempted to communicate her lack of consent to the Agreement to Toyota in any way. Under California law, these facts establish an enforceable agreement between Ms. Aquino and Toyota. Craig, 84 Cal. App. 4th at 422; Davis, 755 F.3d at 1093; Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014) ("By not opting out within the 30–day period, [employee] became bound by the terms of the arbitration agreement. ").

### B. A Jury Trial is Not Necessary

Ms. Aquino contends that she is entitled to an expedited jury trial on Toyota's claim that "she understood . . . her silence to have communicated her absolute and unqualified assent to Toyota's arbitration proposals." ECF No. 24 at 15. However, there is no material fact in dispute for a jury to resolve. The FAA states that "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4. The material facts for the resolution of this motion are not in dispute, and the question of whether Ms. Aquino's continued employment without express communication of assent constituted acceptance of the Agreement is a question of law. Because the Court has determined that an agreement to arbitrate exists, a jury trial is not required.

### C. The Court Stays Further Proceedings

The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . .

9 U.S.C. § 3. The Court has determined that the arbitration agreement is valid, and that the dispute falls within its terms. Therefore, the Court will stay further proceedings pending arbitration.

**CONCLUSION**

The Court grants Toyota's motion to compel arbitration. The Court also grants Toyota's request to stay this action pending arbitration.

The parties shall submit status reports to the Court within ninety days of the filing date of this order, and additional joint status reports every ninety days thereafter, apprising the Court of the status of the arbitration proceedings. Within fourteen days of the completion of the arbitration proceedings, the parties shall jointly submit to the Court a report advising the Court of the outcome of the arbitration, and a request that the case be dismissed or that the case be reopened and a case management conference be scheduled.

IT IS SO ORDERED.

Dated: May 31, 2016

_____
JON S. TIGAR
United States District Judge